UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANGELITA D.,

              Plaintiff,              **DECISION AND ORDER**

    v.

                                   1:21-CV-0065 EAW

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.
_____

## INTRODUCTION

Represented by counsel, Plaintiff Angelita D. ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for supplemental security benefits ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. 7; Dkt. 8) and Plaintiff's reply (Dkt. 9). For the reasons discussed below, Plaintiff's motion (Dkt. 7) is denied and the Commissioner's motion (Dkt. 8) is granted.

## BACKGROUND

Plaintiff protectively filed her application for SSI on June 25, 2018. (Dkt. 6 at 19, 206-212).[1] In her application, Plaintiff alleged disability beginning February 15, 2018. (*Id.* at 19, 206). Plaintiff's applications were initially denied on October 18, 2018. (*Id.* at 19, 102-107). At Plaintiff's request, a video hearing was held before administrative law judge ("ALJ") P. H. Jung on April 1, 2020. (*Id.* at 33-62). Plaintiff appeared in Buffalo, New York, and the ALJ presided over the hearing from Kansas City, Missouri. (*Id.* at 19). On May 5, 2020, the ALJ issued an unfavorable decision. (*Id.* at 19-28). Plaintiff then requested review by the Appeals Council, which was denied on November 16, 2020, making the ALJ's determination the final decision of the Commissioner. (*Id.* at 5-10).

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.    Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of

Regulation No. 4 (the "Listings").  *Id*. § 416.920(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. § 416.929), the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id*. § 416.920(e).  The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id*. § 416.920(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id*. § 416.920(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

## DISCUSSION

### I.    The ALJ's Decision

In deciding whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation analysis set forth in 20 C.F.R. § 416.920 and determined at step one of the analysis that Plaintiff had not engaged in substantial gainful work activity since June 25, 2018, the application date.  (Dkt. 6 at 21).

At step two, the ALJ found that Plaintiff suffered from several severe impairments: chronic obstructive pulmonary disease, asthma, scoliosis lumbar disorder, and headaches. (*Id.*).

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.*). The ALJ considered Listings 1.02, 1.04, 3.02, and 3.03 in making that determination. (*Id.* at 21-22).

Before proceeding to step four, the ALJ concluded that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 416.967(a), except that:

> [She] cannot climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs; occasionally balance, stoop, kneel, crouch, and crawl . . .; must avoid more than occasional exposure to fumes, dust, gases, poor ventilation, odors; must avoid frequent exposure to extreme cold, extreme heat, wetness, humidity, hazards, machinery, and heights; and is limited to simple, routine and repetitive tasks due to side effects from medications.

(*Id.* at 22).

At step four, the ALJ found that Plaintiff did not have any past relevant work. (*Id.* at 26). With the help of the VE, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as the occupations of laundry classifier, ticket taker, and router. (*Id.* at 27). Accordingly, the ALJ concluded that Plaintiff was not disabled from the date of her application through the date of the decision. (*Id.*).

**II.    The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error**

Plaintiff argues that the matter should be reversed, or, in the alternative, remanded for further proceedings because the ALJ failed to properly evaluate two medical opinions of record. (Dkt. 7-1 at 10-16). The Commissioner argues that the ALJ properly considered the record in accordance with regulations and determined that Plaintiff, despite her impairments, was able to perform light work with additional limitations. (Dkt. 8-1 at 4-25). For the reasons discussed below, the Court finds Plaintiff's argument without merit.

Under the amendments to the Social Security regulations related to the evaluation of medical evidence for disability claims filed after March 27, 2017, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 416.920c(a). Instead, the ALJ "will articulate in [his or her] determination or decision how persuasive [he or she] find[s] all of the medical opinions and all prior administrative medical findings" in claimant's record based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and 'other factors.'" *Id.* § 416.920c(c). The source of the opinion is not the most important factor in evaluating its persuasive value. *Id.* § 416.920c(b)(2). Rather, the most important factors in evaluating persuasiveness are supportability and consistency. *Id.*

"Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still articulate how [he or she] considered the medical opinions and

how persuasive [he or she] find[s] all of the medical opinions." *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 8 (W.D.N.Y. 2021) (internal citation omitted). Specifically, the ALJ must explain how he considered the supportability and consistency factors, and may, but is not required to, consider the three remaining factors. 20 C.F.R. § 416.920c(b)(2). The ALJ's failure to adequately explain how he considered the supportability and consistency of a medical opinion in the record constitutes procedural error. *Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022). However, even if the ALJ commits such an error, the reviewing court may affirm if "a searching review of the record assures [the court] 'that the substance of the [regulation] was not traversed.'" *Loucks*, 2022 WL 2189193, at *2 (quoting *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (internal citation and quotation marks omitted)).

Here, in determining Plaintiff's RFC, the ALJ relied on several medical opinions—the opinions of State agency doctors J. Koenig, M.D., and T. Bruni, Ph.D.; Medical Examination for Employability Assessment forms completed by practitioners at Urban Family Practice, including those from physician assistants Daniel Fells and Brendan Farnand; and the opinions of consultative examiner Samuel Balderman, M.D., and consultative psychologist Susan Santarpia, Ph.D. Plaintiff challenges the ALJ's evaluation of the opinions of PA Fells and PA Farnand because, she argues, the ALJ relied on mischaracterizations of the record and offered only a conclusory explanation in rejecting their opinions. The Court disagrees.

It has been well-recognized that it is the ALJ who is tasked with formulating an RFC based on a review of the entire record, and that it is within the ALJ's discretion to resolve

genuine conflicts in the evidence. 20 C.F.R. § 416.920c; *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In making the RFC determination, the ALJ may "choose between properly submitted medical opinions," *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (internal citation omitted), and is free to reject portions of a medical opinion that are not supported by objective evidence of record, while accepting those portions that are supported by the record. *See Veino*, 312 F.3d at 588.

PA Fells completed a Medical Examination for Employability Assessment, Disability Screening, and Alcoholism/Drug Addiction Determination on April 25, 2018. (Dkt. 6 at 791-92). In it, he opines that Plaintiff is very limited in walking, sitting, lifting/carrying, pushing/pulling/bending, and stairs or other climbing; moderately limited in standing and using her hands; but found no evidence of limitations in Plaintiff's abilities in seeing, hearing, or speaking. (*Id*. at 792). He noted that he has treated Plaintiff for over ten years. (*Id.*). PA Farnand completed the same form on February 19, 2019. (*Id.* at 777-778). PA Farnand opined that Plaintiff is very limited in walking, sitting, lifting/carrying, and pushing/pulling/bending; moderately limited in standing and using her hands; and also found no evidence of limitations in her seeing, hearing, or speaking abilities. (*Id.* at 778).

The ALJ addressed the forms completed by PA Fells, PA Farnand, and others at Urban Family Practice collectively. Specifically, he stated:

> The record included a Medical Examination for Employability Assessment forms with various opinions both before and during the relevant time period. (Exh. B11F/9, 22, 36, etc.). These are not persuasive. They are not supported by or consistent with the record. Further, the first opinion is from significantly prior to the alleged onset date, making it even less useful for the current determination. Later opinions had no significant narration or explanation to indicate why the provider marked such extreme limitations

(several were marked as "very limited") despite [Plaintiff's] overall generally normal examinations.

(*Id.* at 26).

Conversely, the ALJ deemed the opinions of consultative examiners Dr. Santarpia and Dr. Balderman persuasive. He explained the basis for his determination as follows:

> Additionally, [Plaintiff] was sent for two consultative examinations. First[,] Dr. Susan Santarpia, Ph.D., performed a psychological evaluation. (Exh. B2F). Dr. Santarpia opined [Plaintiff] could understand/remember simple and complex directions; interact adequately with others, sustain concentration and pace; and take appropriate precautions. This is persuasive. It is supported by Dr. Santarpia's examination findings and notations. It is also consistent with the record as a whole, which indicated [Plaintiff] minimally and sporadically mentioned some mild depressive symptoms but generally had normal mental status exams and did not seek any significant mental health specific treatment.
>
> Finally, Dr. Samuel Balderman, M.D., performed a physical evaluation. (Exh. B3F). Dr. Balderman opined [Plaintiff] should avoid dusty environments and she had a moderate limitation in climbing and carrying. This is persuasive. It is supported by Dr. Balderman's examination findings. It is also consistent with the record as a whole. By limiting [Plaintiff] to light work with additional environmental limitations, the undersigned has adequately considered this opinion.

(*Id.* at 26).

The Court concludes that the ALJ properly relied on and considered Plaintiff's overall treatment history, objective diagnostic testing, generally conservative treatment, and her ability to perform various daily activities in assessing the medical opinions. That is precisely the kind of analysis the ALJ was required to perform to determine the supportability and consistency of each opinion with the objective evidence of the record. *See* 20 C.F.R. § 416.920c(b) and (c); *see also Johnson v. Colvin*, 669 F. App'x 44, 46 (2d

Cir. 2016) (an ALJ can look to all of the relevant medical and other evidence, including relevant medical reports, medical history, and a claimant's statements when assessing the RFC); *Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013) (ALJ did not err by failing to adopt consultative examining physician's conclusions in determining the claimant's RFC where the physician's findings were inconsistent with other contemporaneous medical records).

For example, in finding the opinion of Dr. Balderman persuasive, the ALJ relied on Dr. Balderman's examination findings which included his report that Plaintiff appeared in no acute distress, had a normal gait and stance, used no assistive devices, and could walk on heels and toes and rise from a chair without difficulty. (Dkt. 6 at 363). Dr. Balderman also indicated that Plaintiff's cervical spine and lumbar spine showed full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally. (*Id.* at 364). Her joints were stable and nontender. (*Id.*). On the pulmonary function test, Plaintiff had moderate obstruction before and after bronchodilators. (*Id.*).

The ALJ also described the objective medical imaging across Plaintiff's treatment record. He found the imaging to support Plaintiff's identified severe impairments, but noted that her testing was otherwise generally normal. (*Id.* at 24). For example, he noted that spirometry reporting reflected a forced vital capacity ("FVC") of 2.49-2.65 and forced expiratory volume in 1 second ("FEV1") of 1.71-1.81, which was "interpreted as moderate airway obstruction with no clear improvement postbronchodilator." (*Id.*). Chest imaging reflected no active cardiopulmonary and lumbosacral spine imaging "showed scoliosis, no acute fracture or subluxation, and well maintained disc spaces." (*Id.*).

Similarly, the ALJ noted that Plaintiff's examination findings were fairly normal and often reflected Plaintiff as alert, oriented, and not in acute distress. (*Id*.). While she sought emergency treatment for shortness of breath and asthma on a few occasions, he cited numerous instances where her respiratory exams generally showed her lungs to be clear to auscultation, non-labored respirations, and equal breath sounds. (*Id.*). He also cited to treatment notes indicating that musculoskeletal exams showed nontender back, normal range of motion, normal alignment, strength, and no swelling. (*Id.*). Similarly, the ALJ cited treatment records showing general normal neurological exams with no neurological deficit observed. (*Id.*).

Overall, the ALJ considered Plaintiff's treatment to be relatively conservative. (*Id.* at 25). He acknowledged that she received some breathing treatments for bouts of wheezing and has had a number of medications prescribed, but noted that those medications have been generally successful in controlling Plaintiff's symptoms. Such considerations were proper. *See Leroy R. v. Comm'r of Soc. Sec.*, No. 1:20-CV-01299-EAW, 2022 WL 4128894, at *5 (W.D.N.Y. Sept. 12, 2022) ("In addition to considering medical opinions and prior administrative records, the ALJ properly took into account Plaintiff's conservative course of treatment for his alleged disabling conditions."); *James D. v. Comm'r of Soc. Sec.,* No. 1:20-CV-00720 EAW, 2021 WL 2793667, at *8 (W.D.N.Y. July 6, 2021) ("It was proper for the ALJ to consider . . . Plaintiff's . . . conservative treatment in assessing the credibility of his subjective complaints." (citing *Rivera v. Comm'r of Soc. Sec.*, 368 F. Supp. 3d 626, 646 (S.D.N.Y. 2019) ("While conservative treatment alone is not grounds for an adverse credibility finding . . . the ALJ may take it

into account along with other factors.")))); *Thomas v. Comm'r of Soc. Sec. Admin.*, 479 F. Supp. 3d 66, 89 (S.D.N.Y. 2020) ("In the context of a medical opinion, courts have found substantial evidence to support an ALJ's decision to discount an opinion where the opinion was not supported by the . . . treatment progress notes[,] which show that the claimant's condition was stable from conservative treatment with medication and therapy." (citation and quotation omitted)).

Finally, the ALJ considered Plaintiff's testimony and description of her activities of daily living. (Dkt. 6 at 25). He noted that she is able to exercise, and bathe, dress, and groom herself. He found her to be independent in all activities of daily living and able to cook, clean, and do laundry. (*Id.*). He also noted that she engages in social activities, takes care of her children, uses public transportation, and shops. (*Id.*). These too were appropriate considerations by the ALJ as he weighed evidence and determined Plaintiff's RFC. *See Rusin v. Berryhill*, 726 F. App'x 837, 840 (2d Cir. 2018) (severe limitations claimed by the plaintiff were inconsistent with his report that he "cooked simple meals daily, left the house daily, can drive, and shopped for groceries every two weeks"); *Angela H.-M. v. Comm'r of Soc. Sec.*, No. 6:20-CV-06676 EAW, 2022 WL 4486320, at *7 (W.D.N.Y. Sept. 27, 2022) ("[I]t is well-settled that an ALJ may consider Plaintiff's activities of daily living when evaluating her credibility.").

Moreover, contrary to Plaintiff's argument, the ALJ gave adequate explanations for his assessment of the opinions of PA Fells and PA Farnand in finding them to not be persuasive. The Court finds no error in the ALJ's observation that these forms are unaccompanied by any meaningful narration or explanation. As noted above, the

applicable regulations expressly provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1) (emphasis added). The Court accordingly cannot fault the ALJ for noting that the lack of explanation was particularly glaring when the opinions identified extreme limitations without citing to any underlying or supporting treatment notes. *See Halloran v. Barnhart*, 362 F.3d 28, 31 n.2 (2d Cir. 2004) (a standardized form without accompanying explanation is "only marginally useful for purposes of creating a meaningful and reviewable factual record").

Nor is the Court persuaded by Plaintiff's suggestion that the ALJ should have re-contacted PA Fells and PA Farnand for greater elaboration. (See Dkt. 7-1 at 14 ("If the specific examination findings from those treatment notes were still inadequate to satisfy the ALJ's personal expectations, the ALJ could have easily re-contacted PA Fells and PA Farnand for greater elaboration of their findings, instead of using the nature of the forms they completed to Plaintiff's disadvantage in a supposedly non-adversarial proceeding.")). "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information . . . ." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (internal quotation marks and citation omitted); *see also Reithel v. Comm'r of Soc. Sec.*, 330 F. Supp. 3d 904, 912 (W.D.N.Y. 2018) ("[T]he ALJ need only re-contact sources or obtain additional information where there is a conflict or ambiguity that must be resolved but that cannot be

resolved based on the evidence present in the record."). Here, the ALJ had ample information on which to base his findings and was not required to recontact PA Fells or PA Farnand.

Finally, Plaintiff's assertion that the ALJ improperly credited the consultative examiners' opinions over those of his treating providers lacks merit. Plaintiff essentially invites the Court to reweigh the evidence and conclude that PA Fells and PA Farnand were entitled to more credence than Dr. Balderman. That is not the function of this Court. An ALJ is free to rely on the opinion of a consultative examiner where he finds it more persuasive than the opinion of a treating physician. *See Michael H. v. Saul*, No. 19-CV-6673F, 2021 WL 288793, at *6 (W.D.N.Y. Jan. 28, 2021) ("[T]he ALJ is permitted to rely on the opinion of a consultative examiner provided the opinion is supported by and consistent with other evidence in the record[.]"). Here, the ALJ appropriately explained his conclusion that Dr. Balderman's opinion was consistent with the medical evidence of record and the Court has no basis to disturb that conclusion. *See Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 58-59 (2d Cir. 2013) (applying the "very deferential [substantial evidence] standard of review, . . . once an ALJ finds facts, [the Court] can reject those facts only if a reasonable factfinder would have to *conclude otherwise*") (quotations omitted). Because it is the ALJ who is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole" (*id*.), and because the RFC determination is reserved to the Commissioner and not a medical professional, the Court is satisfied with the ALJ's analysis of the record and his ultimate RFC determination. *See Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("[T]he ultimate finding of whether a

claimant is disabled and cannot work—[is] reserved to the Commissioner. That means that the Social Security Administration considers the data that physicians provide but draws its own conclusions as to whether those data indicate disability." (internal quotation and citation omitted)).

In sum, the Court finds no reversible error in the ALJ's consideration of the medical opinion evidence. Remand is not warranted on this basis.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 8) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 7) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:   December 1, 2022
         Rochester, New York